UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-274-GWU

ANTHONY ADAM ELDRIDGE,                                     PLAINTIFF

VS.                      **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                         DEFENDANT

**INTRODUCTION**

Anthony Eldridge brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Child's Disability Insurance Benefits (CIB) and for Supplemental Social Security Income (SSI). The case is before the court on cross-motions for summary judgment.

**CHILD'S DISABILITY INSURANCE**

An individual who becomes disabled as defined by 42 U.S.C. § 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB. 42 U.S.C. § 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults. 42 U.S.C. § 423(d).

1

## LAW APPLICABLE TO ADULT'S SSI BENEFITS

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563

provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Eldridge, a 20-year-old man with a "limited" education and no past relevant work history, suffered from

impairments related to borderline intelligence. (Tr. 14, 17). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of work at all exertional levels. (Tr. 16). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 17-18). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 18).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Darryl Martin included such non-exertional limitations as mild restrictions concerning daily living and social functioning, a restriction to simple, repetitive tasks requiring minimal judgment, a limitation to object-focused, low stress work environments and no tasks requiring significant reading, writing or math skills. (Tr. 286). In response, the witness identified a significant number of jobs in the national economy including such positions as cleaner (13,400 statewide jobs), groundskeeper (2,400 statewide jobs) and farm worker, stable cleaning type work (600 statewide jobs). (Tr. 287-288). Therefore, assuming that the vocational factors considered by Martin fairly characterized the condition of Eldridge, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Psychologist Michelle Amburgey was the only mental health professional to examine Eldridge.  Intelligence testing administered by Amburgey revealed a Verbal IQ score of 74, a Performance IQ score of 76 and a Full Scale IQ score of 73.  (Tr. 206).  These scores were all within the borderline range of intellectual functioning.  (Tr. 207).  Achievement testing indicated that the plaintiff functioned at the third grade level in reading, at the second grade level in spelling and the fourth grade level in arithmetic.  (Id.).  The examiner noted no sign of a mood disorder or any type of a thought disorder.  (Tr. 206).  The claimant described no symptoms of depression or anxiety. (Tr. 207).  The psychologist reported a diagnostic impression of a learning disorder and borderline intelligence.  (Tr. 208).  Amburgey opined that while Eldridge should not be trusted to deal with hazardous situations, he would be able to concentrate and complete repetitive tasks on a regular basis. (Id.).  The ALJ indicated that he was relying upon the opinion of Amburgey.  (Tr. 17).  The mental factors of the hypothetical question were essentially consistent with this opinion.  The hypothetical question did not include a limitation concerning exposure to hazards.  However, the <u>Dictionary of Occupational Titles</u> (DOT) indicates that the jobs cited by the vocational expert would not require exposure to hazardous conditions.[1]  Therefore, the court finds that Amburgey's report supports the administrative decision.

---

[1] See DOT number 406.684-014 concerning the job of groundskeeper, DOT number 410.674-010 concerning the job of farm worker animal attendant and DOT number 599.687-030 concerning the job of cleaner.

7

Psychologists Thompson Prout (Tr. 223-226) and Mary Thompson (Tr. 242-245) each reviewed the record and opined that Eldridge would be "moderately" limited in such areas as understanding, remembering and carrying out detailed instructions and in maintaining attention and concentration for extended time periods.  The limitation concerning attention and concentration noted by the reviewers was more severe than that found by the ALJ.  The plaintiff has not raised the omission of this factor as an issue.  Amburgey, the examining source, did not impose limitations on the claimant's ability to concentrate.  The administrative regulations provide that "generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 416.927(d)(1).  Furthermore, Social Security Ruling 85-15 indicates that when a person's only limitation is mental, then a finding of disabled status is only appropriate if the impairment causes a "substantial" loss of ability to handle simple instructions, respond appropriately to supervision, co-workers or usual work situations, and to deal with changes in a routine work setting.  The medical reviewers did not identify mental limitations of such severity.  Therefore, their opinions also do not support the plaintiff's claim of total disability.

Eldridge argues that the ALJ erred by failing to provide specific rationale for rejecting the credibility of his testimony.  However, the court notes that the ALJ cited a number of reasons for not fully crediting the plaintiff's complaints.  Among the reasons reported by the ALJ was the fact that the claimant maintained current

8

hunting and fishing licenses. (Tr. 16, 29). The court notes that the young man testified that he had taken a hunting course in order to get the hunting license. (Tr. 29). Amburgey's testing revealed borderline intellectual functioning and only modest mental limitations. (Tr. 16, 207-208). No treating source contradicted the examiner's opinion. (Tr. 17). Both Eldridge and his mother reported that he had no significant medical problems. (Tr. 17, 205). Therefore, under these circumstances, the court finds no error.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this decision.

This the 26th day of July, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**